**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL G. DUANY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENERGY TRANSFER PARTNERS, L.P., ENERGY TRANSFER PARTNERS GP, L.P., ENERGY TRANSFER PARTNERS, L.L.C., ENERGY TRANSFER EQUITY, L.P., KELCY L. WARREN, TED COLLINS, JR., MICHAEL K. GRIMM, MARSHALL S. MCCREA, III, JAMES R. PERRY, MATTHEW S. RAMSEY, and DAVID K. SKIDMORE,<br><br>Defendants. | Case No. ______________<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael G. Duany ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is a unitholder action brought by Plaintiff on behalf of himself and the other public unitholders of Energy Transfer Partners, L.P. ("ETP" or the "Partnership") against ETP, ETP's general partner Energy Transfer Partners GP, L.P. ("ETP GP"), ETP GP's general partner Energy Transfer Partners, L.L.C. ("ETP LLC"), ETP, ETP GP, Sunoco and Sunoco Partners LLC's indirect parent entity Energy Transfer Equity, L.P. ("ETE") and ETP's Board of Directors (the "Board" or the "Individual Defendants"), to enjoin the vote on a proposed transaction, pursuant to which ETP will be acquired by Sunoco Logistics Partners L.P. ("Sunoco") through

Sunoco's wholly-owned subsidiary SXL Acquisition Sub LP ("Merger Sub") (the "Proposed Transaction").

2. ETP is a Fortune 500 natural gas and propane master limited partnership, founded in 1995 and headquartered in Dallas. The Partnership is the parent entity of Dakota Access, LLC, the company developing the notable Dakota Access Pipeline. ETP's business consists of natural gas, liquids, and product and crude oil operations.

3. On November 21, 2016, ETP and Sunoco issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 20, 2016[1] to sell ETP to Sunoco. Under the terms of the Merger Agreement, ETP common unitholders will receive 1.5 Sunoco common units for each ETP common unit they own, and holders of ETP Series A Cumulative Convertible Preferred Units will receive an equal number of Sunoco preferred units, with the same rights, preferences, privileges, duties and obligations that such Series A units had immediately prior to the closing of the merger, subject to certain adjustments in accordance with the ETP partnership agreement (the "Merger Consideration"). The Merger Consideration is valued at $39.29 per unit based on the November 18, 2016 Sunoco closing price—the last trading day before the announcement of the Proposed Transaction.

4. The Proposed Transaction is the result of an unfair process and provides the Partnership's unitholders with inadequate consideration. As further described below, both the value to ETP unitholders contemplated in the Proposed Transaction and the process by which defendants propose to consummate the Proposed Transaction are fundamentally unfair to

[1] On December 16, 2016, the Board and the Energy Transfer Equity, L.P. ("ETE") board of directors each approved and adopted Amendment No. 1 to the Merger Agreement. Amendment No. 1 to the Merger Agreement reflects a change in the merger structure, whereby Sunoco GP will merge with ETP GP, with ETP GP surviving the Proposed Transaction as an indirect wholly-owned subsidiary of ETE and Sunoco GP.

Plaintiff and the other public unitholders of the Partnership. Notably, as recently as November 14, 2016 – just one week prior to the parties announcing the Proposed Transaction – an analyst with Credit Suisse set a $50.00 per unit price target for the Partnership—a $10.71 premium to the Merger Consideration. Further, ETP units traded above the implied value of the Merger Consideration as recently as September 8, 2016, when units traded as high as $39.35 per unit.

5. As detailed below, the acquisition of ETP by Sunoco is an insider transaction facilitated by ETE, which is the indirect parent entity of ETP, ETP GP, Sunoco and Merger Sub. Upon consummation of the Proposed Transaction, ETP Chief Executive Officer ("CEO") and Chairman Kelcy L. Warren ("Warren"), President and Chief Operating Officer ("COO") Matthew S. Ramsey ("Ramsey"), director Marshall S. McCrea, III ("McCrea"), and Chief Financial Officer ("CFO") Tom Long ("Long") will all assume executive positions with the combined partnership. Moreover, as detailed below, ETP's conflicted financial advisor Barclays Capital Inc. ("Barclays") stands to benefit as well. While ETP's public unitholders will lose control of the Partnership for unfair consideration and face a substantially reduced dividend, certain Partnership insiders will substantially benefit if the Proposed Transaction is consummated.

6. On December 20, 2016, Sunoco filed a Registration Statement on Form S-4 (the "Registration Statement") with the U.S. Securities and Exchange Commission ("SEC"). The Registration Statement, which recommends that ETP unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) ETP and Sunoco's projections, utilized by the Partnership's financial advisor Barclays in its financial analyses; (ii) the valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) material information concerning the sale process

leading up to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the U.S. Securities and Exchange Act of 1934 (the "Exchange Act") as unitholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

7. In short, the Proposed Transaction will unlawfully divest ETP's public unitholders of the Partnership's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Partnership unitholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the unitholders' vote on the Proposed Transaction unless and until such problems are remedied.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.

9. This Court has jurisdiction over the defendants because each conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. ETP is a limited partnership headquartered in this District. Moreover, each of the Individual Defendants, as Partnership officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

11. Plaintiff is and has been at all times relevant hereto, a continuous unitholder of ETP.

12. Defendant ETP is a Delaware limited partnership with its principal executive offices located at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. The Partnership's common units are traded on the New York Stock Exchange under the ticker symbol "ETP."

13. Defendant ETP GP is a Delaware limited partnership and the general partner of ETP.

14. Defendant ETP LLC is the general partner of ETP GP.

15. Defendant ETE is a Delaware limited partnership and indirect parent entity of ETP, ETP GP, Sunoco and Sunoco Partners LLC ("Sunoco GP"). ETE's headquarters are also located at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. ETE's common units trade on the New York Stock Exchange under the ticker symbol "ETE."

16. Defendant Warren is Chairman of the Board and CEO, and has been a director of the Partnership since 2004. Defendant Warren also serves as Chairman of ETE's board of directors.

17. Defendant Ted Collins, Jr. ("Collins") has been a director of the Partnership since 2004. Defendant Collins also serves on ETE's board of directors.

18. Defendant Michael K. Grimm ("Grimm") has been a director of the Partnership since 2005.

19. Defendant McCrea has been a director of the Partnership since 2009. Defendant McCrea also serves as a member of ETE's and Sunoco's boards of directors.

20. Defendant James R. "Rick" Perry ("Perry") served as a director of the Partnership from 2015 to December 31, 2016. Defendant Perry also serves on Sunoco's board of directors.

21. Defendant Ramsey is President and COO, and has been a director of the Partnership since 2015. Defendant Ramsey also serves as Chairman of Sunoco LP's ("SUN") board of directors and serves on ETE's board of directors.

22. Defendant David K. Skidmore ("Skidmore") has been a director of the Partnership since 2013.

23. Defendants Warren, Collins, Grimm, McCrea, Perry, Ramsey and Skidmore are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24. Sunoco is a Delaware limited partnership with its principal executive offices located at 3807 West Chester Pike, Newtown Square, Pennsylvania 19073. It owns, operates and acquires a geographically diverse portfolio of complementary pipeline, terminalling and crude oil acquisition and marketing assets. Sunoco's common units trade on the New York Stock Exchange under the ticker symbol "SXL."

25. Sunoco GP is a Delaware limited partnership and the general partner of Sunoco.

26. Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of Sunoco.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all persons and entities that own ETP common units (the "Class"). Excluded from the Class are defendants and their affiliates, immediate

families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

29. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of November 18, 2016, there were approximately 544,565,775 common units of Partnership common units issued and outstanding. All members of the Class may be identified from records maintained by ETP or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

30. Questions of law and fact are common to the Class, including, among others, whether the Registration Statement is materially false and misleading.

31. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.

32. Plaintiff will fairly and adequately protect the interests of the Class, and have no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

34. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, and are causing injury to the entire class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Partnership Background

35. The Energy Transfer family of entities is based in Texas and was founded in 1995 as a small intrastate natural gas pipeline operator. Today, there are four publicly traded partnerships in the Energy Transfer family: ETP, ETE, Sunoco and Sunoco LP, which collectively control approximately 71,000 miles of natural gas, natural gas liquids, refined products and crude oil pipelines.

36. ETP owns and operates one of the largest and most diversified portfolios of energy assets in the United States. ETP's subsidiaries include Panhandle Eastern Pipe Line Company, LP and Lone Star NGL LLC, which owns and operates natural gas liquids storage, fractionation and transportation assets. In total, ETP currently owns and operates approximately 62,500 miles of natural gas and natural gas liquids pipelines. The Partnership also owns its general partner, 100% of the incentive distribution rights, and 67.1 million common units of Sunoco, which operates a geographically diverse portfolio of complementary assets which are used to facilitate the purchase and sale of crude oil, natural gas liquids, and refined products. ETE owns a controlling interest in ETP and controls the Partnership through ETE's ownership of ETP GP LLC, which is the general partner of ETP GP. ETE also owns all of the limited partner interests of ETP GP.[2]

---

[2] ETE also owns Sunoco. ETE holds a 0.1% membership interest in Sunoco GP, which owns 100% of the general partner interest and incentive distribution rights in Sunoco. Further, ETP owns the general partner, 100% of the incentive distribution rights, and 67.1 million common units of Sunoco. ETE is a master limited partnership that owns the general partner and 100% of

**The Flawed Sale Process**

37. As set forth in the Registration Statement, the Proposed Transaction is the result of a flawed, single-bidder process during which the Individual Defendants held discussions and negotiations solely with Sunoco.

38. Indeed, as the Registration Statement concedes:

> The ETP Conflicts Committee was not authorized to, and did not, conduct an auction process or other solicitation of interest from third parties for the acquisition of ETP. Given ETE's control over ETP's general partner, it was unrealistic to expect or pursue an unsolicited third party acquisition proposal or offer for the assets or control of ETP, and it was unlikely that the ETP Conflicts Committee could conduct a meaningful auction for the acquisition of the assets or control of ETP.

39. Discussions about a potential merger between Sunoco and ETP began on October 19, 2016, when ETE management held an informal discussion with the Board and the board of directors of LE GP, LLC, ETE's general partner.

40. On November 1, 2016, the Board and the ETE board of directors held a joint meeting to discuss ETP management's analysis related to a potential merger. The Board determined to appoint defendants Grimm and Skidmore to the ETP Conflicts Committee (the "Conflicts Committee") and determined that a potential merger would be subject to the review and approval of the Conflicts Committee.

41. On November 5, 2016, the Conflicts Committee determined to engage Barclays.

42. On November 8, 2016, the Conflicts Committee held a telephonic meeting during which it discussed the structure and rationale of a merger with Sunoco, the role of ETE in such a merger, the exchange of due diligence information (including financial projections), and the

---

the incentive distribution rights of ETP and Sunoco LP. ETE also owns approximately 2.6 million ETP common units and approximately 81.0 million ETP Class H Units, which track 90% of the underlying economics of the general partner interest and IDRs of Sunoco.

anticipated process regarding exchange of proposals and negotiations between the Conflicts Committee and the Sunoco conflicts committee.

43. On November 11, 2016, Warren sent a letter to the Sunoco board of directors indicating that ETE believed it would be advisable for Sunoco to consider making a proposal to acquire ETP in an all-equity transaction, and specified the parameters for the merger consideration in such a transaction.

44. On November 13, 2016, the Conflicts Committee and the Sunoco conflicts committee held a meeting during which Sunoco proposed an acquisition whereby ETP common unitholders would receive a number of Sunoco common units at an exchange ratio reflecting a 5% discount to the spot trading price for the ETP common units. In addition, all nonaffiliated holders of Sunoco common units would receive a one-time special distribution of $2.00 per Sunoco common unit.

45. On November 18, 2016, the Conflicts Committee delivered a counterproposal pursuant to which ETP common unitholders would receive Sunoco common units at an exchange ratio equal to a 10% premium to the spot trading price for the ETP common units, and Sunoco would not make a one-time special cash distribution to its unitholders.

46. On the evening of November 18, 2016, the Chairman of the Sunoco conflicts committee conveyed a revised proposal to Skidmore that ETP common unitholders would receive 1.475 Sunoco common units for each ETP common unit, and all ETP and Sunoco incentive distribution subsidies would remain in place following consummation of the proposed merger.

47. The next day, Skidmore delivered the Board's revised counterproposal wherein ETP common unitholders would receive 1.50 Sunoco common units for each ETP common unit.

The Sunoco conflicts committee determined to accept ETP's revised counterproposal.

48. On November 20, 2016, the Board held a joint meeting with the ETE board of directors. The Conflicts Committee advised that it had approved the Merger Agreement and recommended that the Board approve the Merger Agreement, and submit it to ETP's limited partners for approval. While defendants McCrea and Perry did not attend the meeting for reasons undisclosed in the Registration Statement, the Board approved and adopted the Merger Agreement and recommended that ETP unitholders vote in favor of the Proposed Transaction. The parties subsequently executed the Merger Agreement.

49. From November 22, 2016 to December 8, 2016, ETP, Sunoco, and their counsel "had various discussions regarding alternative structures for the proposed transaction, and in particular, the structure of the GP merger." The Registration Statement fails to disclose the basis for discussing such alternative transaction structures.

**The Proposed Transaction**

50. On November 21, 2016, ETP and Sunoco issued a joint press release stating, in relevant part:

> NEWTOWN SQUARE, Pa. & DALLAS--Nov. 21, 2016-- Sunoco Logistics Partners L.P. (NYSE: SXL) and Energy Transfer Partners, L.P. (NYSE: ETP) today announced that they have entered into a merger agreement providing for the acquisition of ETP by SXL in a unit-for-unit transaction. The transaction was approved by the boards of directors and conflicts committees of both partnerships and is expected to close in the first quarter of 2017, subject to receipt of ETP unitholder approval and other customary closing conditions.
>
> Under the terms of the transaction, ETP unitholders will receive 1.5 common units of SXL for each common unit of ETP they own. This equates to a 10% premium to the volume weighted average pricing of ETP's common units for the last 30 trading days immediately prior to the announcement of the transaction.
>
> * * *
>
> Both ETP and SXL management teams are pleased to be able to bring two strong partnerships together in this strategic transaction that combines the premier crude

> oil midstream MLP with the premier natural gas midstream MLP. The combined partnership is expected to be the second largest MLP as measured by enterprise value.
>
> At the closing of the transaction, the Chief Executive Officer, Chief Commercial Officer, President and Chief Financial Officer of the combined partnership will be Kelcy Warren, Mackie McCrea, Matt Ramsey and Tom Long, respectively, and it is expected that Mike Hennigan and other members of the SXL management team will continue in leading management roles of the combined company with the SXL business headquartered in Philadelphia.

51. Given the potential for increased growth and strong earnings, the Proposed Transaction fails to adequately compensate ETP's unitholders for the intrinsic value of the Partnership, as well as the significant benefits Sunoco will receive from the Proposed Transaction. Sunoco is seeking to acquire the Partnership at a time when the long-term prospects of ETP are increasing, and while its unit price is undervalued. For example, as recently as November 14, 2016, analyst John D. Edwards with Credit Suisse set a $50.00 per unit price target for the Partnership—a $10.71 premium to the Merger Consideration. Further, analyst Theodore Dubin with Goldman Sachs set a $48.00 per unit price target on November 17, 2016, and analyst Jeremy Tonet with J.P. Morgan set a $47.00 per unit price target on October 26, 2016. Additionally, ETP units traded above the Merger Consideration as recently as September 8, 2016, when units traded as high as $39.35 per unit.

**<u>Insiders' Interest in the Proposed Transaction</u>**

52. ETP insiders are the primary beneficiaries of the Proposed Transaction, not the Partnership's public unitholders. As detailed below, the Proposed Transaction was primarily engineered to further the interests of ETE, Sunoco, ETP insiders and Barclays.

53. Aside from their interests as unitholders of ETP, ETP's directors and executive officers have interests in the merger that are different from, or in addition to, the interests of ETP unitholders. Notably, defendant Warren is CEO and Chairman of the board of directors of ETP

GP, as well as Chairman of the board of directors of ETE GP. Defendant McCrea is a director of ETE GP, Chairman of Sunoco GP's board of directors, and COO and a director of ETE GP. Defendant Perry was a director of ETP GP and a director of Sunoco GP. Defendant Ramsey is the President, COO and a director of ETP GP and a director of ETE GP.

54. Following the completion of the merger: (i) defendant Warren is expected to become the CEO of Sunoco; (ii) defendant McCrea is expected to become the CCO of Sunoco; (iii) defendant Ramsey is expected to become the President of Sunoco; and (iv) ETP CFO Long is expected to become the CFO of Sunoco. Additionally, current Board members are expected to serve as members of Sunoco's board of directors following consummation of the merger.

55. Various analysts and reporters have noted that the Proposed Transaction benefits ETE and Sunoco, not ETP's public unitholders:

(a) In a November 21, 2016 *Seeking Alpha* article titled "Sunoco Logistics Partners Has Advantage In Merger With Energy Transfer Partners," the author states that the Proposed Transaction "favors [Sunoco] shareholders and puts ETP shareholders at a disadvantage." Elaborating, the author explains that Sunoco unitholders "are at an advantage here because they are likely to see their dividend grow at a faster pace going forward" and ETP unitholders "are at a disadvantage as they will see a dividend cut." Moreover, the author states that he expects the Proposed Transaction to be consummated because ETE "is likely to be controlling the votes."

(b) In a November 21, 2016 *Wall Street 24/7* article titled "Who Wins From Sunoco Logistics, Energy Transfer Partners Deal?" the author notes that the deal is unusual because of the role ETE played in forming the deal. The article further notes that ETE owns the general partner and 100% of the incentive distribution rights of ***both*** ETP and Sunoco.

(c) In a November 22, 2016 *Bloomberg Gadfly* article by Liam Denning titled "Energy Transfer and the Art of Transference," the author noted that "ordinary investors in [ETP] will get a stealth dividend cut…" Specifically, the article notes that ETP investors "will see their quarterly payout drop from $1.06 to 77 cents -- a cut of 27 percent." The article also notes that ETE will not suffer to the same degree as ETP investors because of "all the new units being created in [Sunoco] to fund the deal."

(d) In a November 23, 2016 *Seeking Alpha* article titled "Sunoco Logistics Partners-Energy Transfer Partners Merger: A Desperate Last Ditch Effort To Keep The Energy Transfer Empire Afloat," the author noted that the unit price of both ETP and Sunoco fell "off a cliff" after the Proposed Transaction was announced, and the market "is signaling its disapproval of the effective 30% distribution cut this actually represents to ETP investors…"

56. Furthermore, Barclays has a long-standing relationship with, and substantial investments in both ETP and Sunoco. Notably, Barclays is the 19th largest unitholder of Sunoco holding approximately 1.07% of Sunoco's outstanding units. Barclays holds a far less significant stake in ETP with 0.31% of ETP's outstanding units. Therefore, Barclays stands to profit from a transaction designed to favor Sunoco, and had a far greater interest in ensuring Sunoco's success than ETP's success in the Proposed Transaction.

57. Thus, the Proposed Transaction is an insider buyout that was facilitated by ETE, its affiliates, and conflicted insiders common to ETP, Sunoco, and/or ETE. The Merger Agreement is the product of an inadequate process that lacked safeguards to ensure that ETP's public unitholders were not taken advantage of by ETE and Sunoco.

**<u>The Registration Statement Contains Numerous Material Misstatements or Omissions</u>**

58. On December 20, 2016, Sunoco filed the materially incomplete and misleading Registration Statement with the SEC and disseminated it to ETP's unitholders. The Registration

Statement misrepresents or omits material information that is necessary for the Partnership's unitholders to make an informed decision whether to vote in favor of the Proposed Transaction.

59. Specifically, as set forth below, the Registration Statement fails to provide Partnership unitholders with material information or provides them with materially misleading information concerning: (i) ETP and Sunoco's projections, utilized by the Partnership's financial advisor, Barclays, in its financial analyses; (ii) the valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) material information concerning the sale process leading up to the Proposed Transaction. Accordingly, ETP unitholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

**Material Omissions Concerning ETP and Sunoco's Financial Projections**

60. The Registration Statement is materially deficient because it fails to disclose material information relating to the Partnership's intrinsic value and prospects going forward.

61. Specifically, the Registration Statement fails to disclose the complete financial projections prepared by management of ETP, for either projection case, as well as a GAAP reconciliation of certain limited, "derived" non-GAAP metrics included in the Registration Statement. Specifically, for both ETP and Sunoco, for the years ended December 31, 2017 through December 31, 2019, the Registration Statement fails to disclose the Partnership's projected (i) stock-based compensation; (ii) diluted units outstanding, as used in Barclays' analyses; (iii) "cash available to pay a unit's distribution expense," including a definition of the term; (iv) revenue; (v) income; (vi) net income; and (vii) expenses.

62. The Registration Statement also fails to disclose the basis of Partnership management's assumption that it would likely have to reduce ETP's distributions during the projection period despite ETP having steadily increased its distributions in recent years.

63. The Registration Statement further fails to disclose: (i) the schedule of the incentive distribution subsidies provided by, and projected to be provided by, ETE to each of ETP and Sunoco; and (ii) the estimates provided by ETP to Barclays regarding the expected synergies anticipated by ETP management following consummation of the Proposed Transaction.

64. In the same regard, the Registration Statement fails to disclose all projected line items for Sunoco, including, but not limited to: (i) revenues; (ii) income; (iii) net income; and (iv) expenses.

65. This information is material because the Partnership's unitholders are receiving Sunoco stock in connection with the Proposed Transaction.

66. Defendants further failed to disclose the Partnership projections prepared in early October 2016 during the sale process, and the various options considered to improve the distribution coverage ratios and leverage ratios at ETP and Sunoco under various assumptions related to future financial performance, including a merger of ETP and Sunoco.

67. Additionally, defendants failed to disclose the details of the financial model ETP provided to Barclays on November 10, 2016.

68. Moreover, defendants failed to disclose (i) the review of ETP's business segments and projections included in a presentation made on November 14, 2016, and (ii) whether the projections included in this presentation differ from the projections in the Registration Statement, and if so, how.

69. The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a) From pages 79-80 of the Registration Statement:

The following table sets forth select projected financial information derived from financial projections prepared by ETP management to reflect the base case for the financial performance for ETP based on the assumptions that the proposed transaction with SXL is not consumated and ETP maintains its cash distribution per ETP common unit at the current cash distribution rate of $4.22 per common unit on an annualized basis (the "ETP Status Quo Case Projections").

| | Year Ending December 31, | | |
|---|---|---|---|
| | **2017E** | **2018E** | **2019E** |
| | ($ in millions, except per unit amounts) | | |
| Consolidated EBITDA | $ 7,071 | $ 8,560 | $ 9,223 |
| EBITDA | $ 5,025 | $ 5,984 | $ 6,485 |
| Distributable cash flow(1) | $ 3,630 | $ 4,560 | $ 5,039 |
| Distributable cash flow per ETP common unit(2) | $ 3.92 | $ 4.02 | $ 4.26 |
| Distribution per ETP common unit | $ 4.22 | $ 4.22 | $ 4.22 |
| Distribution coverage ratio(3) | 0.93x | 0.96x | 1.02x |

-

Distributable cash flow is defined as EBITDA less maintenance capital expenditures, interest expense and cash income taxes paid and the add back of non-cash and transaction-related expenses for ETP's wholly owned subsidiaries.

Gives effect to incentive distribution subsidies of $656.0 million, $138.0 million and $128.0 million for the years ending December 31, 2017, 2018 and 2019, respectively, previously agreed to by ETE.

Distribution coverage ratio is distributable cash flow divided by total cash distributed in respect of limited partner and general partner interests.

The following table presents select projected financial information derived from financial projections proposed by ETP management based upon the ETP Status Quo Case Projections as adjusted to reflect (i) a hypothetical reduction in distributions in respect of ETP common units by approximately 20% in 2017 and that thereafter distributions in respect of ETP common units are made on a basis that results in ETP maintaining a cash coverage ratio of 1.1x, and (ii) a hypothetical removal of a $465 million incentive distribution subsidy that was in place during 2017 (the "ETP Distribution Reduction Case Projections"), which ETP Distribution Reduction Case Projections were prepared to demonstrate and evaluate the impact of a 15% to 25% reduction in the distributions in respect of ETP common units distribution per the ETP Management Written Statement, the primary effect of which is to reduce the number of ETP common units that would otherwise be necessary to issue in order to improve ETP's debt to EBITDA ratio for the purpose of allowing ETP to maintain its investment grade ratings.

| | Year Ending December 31, | | |
|---|---|---|---|
| | **2017E** | **2018E** | **2019E** |
| | ($ in millions, except per unit amounts) | | |
| Consolidated EBITDA | $ 7,071 | $ 8,560 | $ 9,223 |
| EBITDA | $ 5,025 | $ 5,984 | $ 6,485 |
| Distributable cash flow | $ 3,632 | $ 4,575 | $ 5,068 |
| Distributable cash flow per ETP common unit | $ 3.55 | $ 4.04 | $ 4.28 |

(b) From page 83 of the Registration Statement:

The SXL Unaudited Financial Projections are not included in this proxy statement/prospectus in order to induce any unaffiliated ETP unitholders to vote in favor of any of the proposals at the ETP special meeting.

| | Year Ending December 31, | | |
|---|---|---|---|
| | 2017E | 2018E | 2019E |
| | ($ in millions, except per unit amounts) | | |
| EBITDA | $ 1,698 | $ 2,043 | $ 2,256 |
| Distributable cash flow | $ 1,208 | $ 1,418 | $ 1,607 |
| Distributable cash flow per SXL common unit | $ 2.31 | $ 2.55 | $ 2.77 |
| Distribution per common unit | $ 2.17 | $ 2.32 | $ 2.49 |

70. These material omissions of the best estimates of the Partnership's financial future misleads ETP's unitholders by providing only selected information. The omission needs to be remedied prior to the unitholders' vote in order to allow ETP unitholders to make a fully informed voting decision on the Proposed Transaction.

**Material Omissions Concerning Barclays's Financial Analyses**

71. The Registration Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, ETP's public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to ETP unitholders.

72. Specifically, Barclays stated that "[f]or purposes of the Sunoco calculations, the number of units estimated to be outstanding at year end 2016, per the Sunoco Projections, was used to derive implied per unit values," yet the Registration Statement fails to disclose the projected value of the post-merger partnership units, or disclose how much of that value will be contributed by each of the Partnership and Sunoco.

73. With respect to Barclays' *Pro Forma Merger Consequences Analysis* that was presented to the Board, the Registration Statement fails to disclose: (i) the exchange ratio of Sunoco units per ETP unit based on the Status Quo Case; (ii) why the exchange ratio from this analysis substantially differs from that derived from the *Discounted Distributable Cash Flow Analysis*; (iii) the discounted cash flow figures utilized in the analysis, how they differed from the distributable cash flow projections, how the discounted cash flow figures were calculated, the inputs and assumptions for that calculation, and, whether they were based on management cash flow projections; and (vi) the projected value of the post-Merger partnership units, and relative contributions to such value by ETP and Sunoco.

74. With respect to Barclays' *Discounted Distributable Cash Flow Analysis* that was presented to the Board, the Registration Statement fails to disclose: (i) the definition and formula for distributable cash flows used by Barclays; (ii) the basis for two hypothetical reductions in ETP distributions; (iii) Barclays' projected cost of equity for ETP and Sunoco, including all underlying assumptions and the basis for each assumption; (iv) the reasons Barclays deemed different terminal yields appropriate for ETP based on which projection scenario was being used; (v) the implied perpetuity growth rates for each of ETP and Sunoco corresponding to the assumed terminal yields; (vi) the reasons Barclays deemed it appropriate to base its terminal yields on the observed yields of the publicly traded peer companies given that the observed peer-company yields were forward yields (2017E and 2018E), whereas Barclays calculated ETP's terminal value using yields on a trailing basis; and (vii) whether the discount rates were applied to both the estimated distributable cash flows and the terminal values, or just the cash flows; and (viii) the net present value "as of" date used for ETP, and whether it was other than January 1, 2017, as noted with respect to Sunoco.

75. With respect to Barclays' *Selected Comparable Company Analysis* that was presented to the Board, the Registration Statement fails to disclose (i) the individual multiples for the selected comparable companies analyzed by Barclays, including the estimated yields for each of the selected comparable companies; (ii) how the reference equity value range for ETP of $37.00 to $45.00 per ETP common unit was derived by Barclays; and (iii) how the reference equity value range for Sunoco of $26.00 to $33.00 per Sunoco common unit was derived by Barclays.

76. Barclays performed a *Selected Precedent Transactions Analysis* that was presented to the Board, yet the Registration Statement fails to disclose: (i) the individual multiples for each of the selected transactions analyzed by Barclays, as well as any benchmarking analyses Barclays performed for ETP in relation to the target companies; (ii) the basis for including a transaction that occurred nearly 20 year ago; (iii) the basis for including five transactions that occurred during or prior to the recent financial collapse; (iv) the certain "qualitative judgments [by Barclays] concerning differences between the characteristics of the selected precedent transactions and the proposed transaction which would affect the acquisition values of the selected target companies and ETP and [Sunoco]"; (v) how the reference equity value range for ETP of $34.00 to $41.00 per ETP common unit was derived by Barclays; and (vi) how the reference equity value range for Sunoco of $17.00 to $24.50 per Sunoco common unit was derived by Barclays.

77. With respect to Barclays' *Analysis of Equity Research Analyst Price Targets*, the Registration Statement fails to disclose: (i) the overall number of price targets examined and detail each that was above the offer price; (ii) the source of the price targets; and (iii) the dates the price targets were issued.

78. The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a) From page 68 of the Registration Statement:

> For purposes of the ETP calculations, the number of diluted units outstanding at year end 2016, per the ETP Projections, was used to derive implied per unit values. The reference per unit equity value ranges were then also used to generate implied exchange ratios for each of these methodologies. For purposes of the SXL calculations, the number of units estimated to be outstanding at year end 2016, per the SXL Projections, was used to derive implied per unit values. For purposes of its analyses, Barclays looked at the exchange ratio of 1.5000x SXL common units for each ETP common unit to determine an implied equity value of $39.29 per ETP common unit for the proposed transaction based on the closing price of an SXL common unit at market close on November 18, 2016. For each of the discounted distributable cash flow analysis, the selected comparable company analysis, the selected precedent transactions analysis, and the analysis of public third-party equity research analyst price targets, the implied equity value ranges per ETP common unit and the implied exchange ratios were then compared to the exchange ratio of 1.5000x SXL common units for each ETP common unit in the proposed transaction.

(b) From pages 75-76 of the Registration Statement:

> ***Pro Forma Merger Consequences Analysis***
> Barclays reviewed and analyzed the pro forma impact of the transaction on projected distributable cash flow ("DCF") and distributions of the combined company for each of 2017, 2018, and 2019. Barclays performed this analysis based on the ETP Projections, SXL Projections and the IDR Projected Subsidies and taking into account the Expected Synergies, using pro forma EBITDA for the combined company of $5,144 million, $7,475 million and $8,178 million for the remainder of 2017 (assuming a closing date of March 31, 2017), 2018 and 2019, respectively. EBITDA is a non-GAAP financial performance measure that subtracts from Consolidated EBITDA amount related to less than wholly owned subsidiaries and adds back cash distributions from said entities. Based upon the IDR Projected Subsidies, Barclays assumed that ETE will provide total incentive distribution subsidies of $656 million in 2017, $153 million in 2018 and $128 million in 2019 and that $33 million of annual incentive distribution subsidies will remain in effect in perpetuity, consistent with the current incentive distribution subsidies in place at ETP. In connection with this analysis, Barclays noted that the implied pro forma debt to EBITDA ratio for SXL was 4.9x, 4.0x and 3.7x for 2017, 2018 and 2019, respectively, and for ETP was 5.2x, 4.4x and 4.1x for 2017, 2018 and 2019 respectively. With respect to the pro forma analysis using ETP Projections and SXL Projections, Barclays noted that pro forma per unit distributions for the combined company would be dilutive to ETP standalone in

each of 2017, 2018, and 2019, respectively. For SXL, with respect to the pro forma analysis based on ETP Projections and SXL Projections, Barclays noted that per unit distributions for the combined company would be accretive to SXL standalone in each of 2017, 2018, and 2019. Additionally, Barclays noted the pro forma dilution indicated to result from the proposed transaction under the pro forma merger consequence analysis relative to standalone ETP common unit distributions per the ETP Projections would be less than the distribution reduction arising from ETP Distribution Reduction Case, which ETP management stated would be the likely course of action in the absence of the proposed transaction, in 2017 and approximately neutral relative to such reduction in per ETP common unit distributions arising from ETP Distribution Reduction Case in each of 2018 and 2019. Barclays further noted the pro forma dilution indicated to result from the proposed transaction under the pro forma merger consequence analysis relative to standalone ETP distributable cash flow per ETP common unit per the ETP Projections would be less than the reduction in distributable cash flow per ETP common unit arising from ETP Distribution Reduction Case, which ETP management stated would be the likely course of action in the absence of the proposed transaction, in 2017, approximately neutral relative to distributable cash flow per ETP common unit arising from ETP Case in 2018 and accretive relative to distributable cash flow per ETP common unit arising from ETP Distribution Reduction Case in 2019. The tables below provide a pro forma comparison of the ETP Status Quo Case relative to the ETP Distribution Reduction Case and a comparison of the pro forma consequences of the proposed transaction to SXL and ETP as compared to the ETP Status Quo Case.

| | | Status Quo Case -- Metric Per Unit | Distribution Reduction Case -- Metric Per Unit | Distribution Reduction Case -- Percentage Change Relative To ETP Status Quo Case | Proposed Transaction -- Metric Per Unit | Proposed Transaction -- Percentage Change Relative To ETP Status Quo Case |
|---|---|---|---|---|---|---|
| **Pro Forma Impact to SXL** | 2017E DCF / Common Unit | $ 2.27 | NA | NA | $ 2.51 | 10.5% |
| | 2018E DCF / Common Unit | $ 2.55 | NA | NA | $ 2.70 | 5.9% |
| | 2019E DCF / Common Unit | $ 2.77 | NA | NA | $ 2.90 | 4.6% |
| | 2017E Distribution / Common Unit | $ 2.17 | NA | NA | $ 2.38 | 9.9% |
| | 2018E Distribution / Common Unit | $ 2.32 | NA | NA | $ 2.50 | 7.4% |
| | 2019E Distribution / Common Unit | $ 2.49 | NA | NA | $ 2.65 | 6.2% |

| | | Status Quo Case -- Metric Per Unit | Distribution Reduction Case -- Metric Per Unit | Distribution Reduction Case -- Percentage Change Relative To ETP Status Quo Case | Proposed Transaction -- Metric Per Unit | Proposed Transaction -- Percentage Change Relative To ETP Status Quo Case |
|---|---|---|---|---|---|---|
| **Pro Forma Impact to ETP** | 2017E DCF / Common Unit | $ 3.92 | $ 3.55 | (9.6%) | $ 3.76 | (4.1%) |
| | 2018E DCF / Common Unit | $ 4.02 | $ 4.04 | 0.3% | $ 4.05 | 0.6% |
| | 2019E DCF / Common Unit | $ 4.26 | $ 4.28 | 0.5% | $ 4.35 | 2.3% |
| | 2017E Distribution / Common Unit | $ 4.22 | $ 3.37 | (20.1%) | $ 3.57 | (15.3%) |
| | 2018E Distribution / Common Unit | $ 4.22 | $ 3.75 | (11.1%) | $ 3.75 | (11.3%) |
| | 2019E Distribution / Common Unit | $ 4.22 | $ 3.98 | (5.7%) | $ 3.97 | (6.0%) |

(c) From pages 68-69 of the Registration Statement:

***Discounted Distributable Cash Flow Analysis***

In order to estimate the present values of ETP common units and SXL common units, Barclays performed discounted distributable cash flow analyses for each of ETP and SXL. A discounted cash flow analysis is a traditional valuation methodology used to derive an intrinsic valuation of an asset by calculating the "present value" of estimated future cash flows of the asset; in this case, the "present value" of the estimated future distributable cash flows of the ETP common units and the SXL common units. "Present value" refers to the current value of future cash flows or amounts and is obtained by discounting those future distributable cash flows by a range of discount rates that takes into account macroeconomic assumptions and estimates of risk, the opportunity cost of capital, expected returns, the time value of money, and other appropriate factors. The discounted distributable cash flow analysis for the ETP common units was performed under two scenarios provided by the management of ETP, each of which are described below.

The first scenario considered status quo ETP utilizing the ETP Status Quo Case Projections (as defined in the section entitled "Unaudited Financial Projections of ETP") which are derived from the ETP Projections from 2017 through 2019 ("ETP Status Quo Case"). The second scenario is based on the ETP Distribution Reduction Case Projections (as defined in the section entitled "Unaudited

Financial Projections of ETP") which are derived from the ETP Status Quo Case Projections but adjusted to reflect (i) a hypothetical reduction in distributions in respect of ETP common units by approximately 20% in 2017 and that thereafter distributions in respect of ETP common units are made on a basis that results in ETP maintaining a cash coverage ratio of 1.1x, and (ii) the hypothetical removal of a $465 million incentive distribution subsidy that was in place during 2017 ("ETP Distribution Reduction Case"). "Cash Coverage" refers to a ratio used to determine the amount of cash available to pay a unit's distribution expense, and is expressed as a ratio of the cash available to the distribution being paid.

To calculate the estimated per ETP common unit equity value ranges in the discounted distributable cash flow analysis, Barclays added (i) projected distributable cash flow per ETP common unit for fiscal years 2017 through 2019 based on the ETP Projections to (ii) the terminal value at the end of the forecast period, or the "terminal value" of the ETP common units, as of December 31, 2019, and discounted such distributable cash flows per ETP common unit to their net present value using selected discount rates for each of the ETP Status Quo Case and ETP Distribution Reduction Case. For each case, Barclays used a nominal discount rate range of 12.5% to 14.5%. This discount rate range was selected by Barclays using its professional judgment and experience, taking into account projected cost of equity capital rates for ETP and the comparable companies utilized in the Selected Comparable Companies Analysis described below. The terminal value of the ETP common units was estimated by applying a range of assumed yields of 8.0% to 10.0% in ETP Status Quo Case and a range of assumed yields of 7.5% to 9.5% in ETP Distribution Reduction Case to ETP's estimated distributable cash flow per ETP common unit for 2019 for ETP Status Quo Case and ETP Distribution Reduction Case, respectively. The assumed yields were selected based on Barclays' professional judgment and experience, taking into account the yields of ETP and the selected comparable companies utilized in the Selected Comparable Companies Analysis described below. The reference equity value range per ETP common unit yielded by the ETP discounted distributable cash flow analysis implied an equity value range for the ETP common units of (i) $39.50 to $44.00 per ETP common unit based on ETP Status Quo Case; and (ii) $40.00 to $46.00 per ETP common unit based on ETP Distribution Reduction Case, in each case, as compared to the closing ETP common unit price of $39.37 on November 18, 2016.

To calculate the estimated per SXL common unit equity value ranges in the discounted distributable cash flow analysis for SXL, Barclays added (i) projected distributable cash flow per SXL common unit for fiscal years 2017 through 2019 based on the SXL Projections to (ii) the terminal value of the SXL common units, as of December 31, 2019, and discounted such distributable cash flows per SXL common unit to their net present value as of January 1, 2017 using a nominal discount rate range of 10.0% to 12.0%. This discount rate range was selected by Barclays using its professional judgment and experience, taking into account projected cost of equity capital rates for SXL and the selected comparable

companies utilized in the Selected Comparable Companies Analysis described below. The terminal value of the SXL common units was estimated by applying a range of assumed yields of 7.5% to 9.5% to SXL's 2019 estimated distributable cash flow per SXL common unit. The assumed yields were selected based on Barclays' professional judgment and experience, taking into account the yields of SXL and the selected comparable companies utilized in the Selected Comparable Companies Analysis described below. The reference equity value range for the SXL common units yielded by the SXL discounted distributable cash flow analysis implied an equity value range for SXL of $29.00 to $33.00 per SXL common unit, as compared to the closing SXL common unit price of $26.19 on November 18, 2016.

Using the implied reference equity value per unit ranges for each of the ETP common units and the SXL common units, Barclays derived reference implied exchange ratio ranges of (i) 1.1970x to 1.5172x based on ETP Status Quo Case without including Expected Synergies; (ii) 1.1695x to 1.4778x based on ETP Status Quo Case with Expected Synergies; (iii) 1.2121x to 1.5862x based on ETP Distribution Reduction Case without Expected Synergies; and (iv) 1.1843x to 1.5450x based on ETP Distribution Reduction Case with Expected Synergies.

Barclays noted that the exchange ratio of 1.5000x to be offered to unaffiliated ETP unitholders in the proposed transaction was in line with the implied equity value ranges per ETP common unit and the implied exchange ratio yielded by Barclays' discounted distributable cash flow analysis.

(d) From pages 70-71 of the Registration Statement:

***Selected Comparable Company Analysis***

In order to assess how the public market values units of similar publicly traded MLPs, Barclays reviewed and compared specific financial and operating data relating to ETP and SXL to that of MLPs selected by Barclays based on Barclays' experience with MLPs. None of the MLPs that were selected for such purpose were subsequently excluded in conducting this analysis.

The MLPs selected with respect to ETP were:

Enbridge Energy Partners, LP;

Enterprise Products Partners, LP;

ONEOK Partners, LP;

Plains All American Pipeline, LP; and

Williams Partners, LP.

Barclays calculated and analyzed distributable cash flow per unit yields using published estimates by third party equity research analysts for estimated distributable cash flow per unit in 2017 and 2018 for each of the comparable companies selected and for ETP using the ETP Projections. The results of the ETP selected comparable company analysis are summarized below:

| | Yield Range of Comparable MLPs of ETP | | |
|---|---|---|---|
| **Distributable Cash Flow per Unit Yield:** | **Low** | **Median** | **High** |
| 2017E Yield | 7.9% | 8.3% | 11.7% |
| 2018E Yield | 8.2% | 8.9% | 12.2% |

Barclays selected the comparable MLPs listed above because their business and operating profiles are reasonably similar to that of ETP. However, because of the inherent differences between the business, operations and prospects of ETP and those of the selected comparable companies, Barclays believed that it was inappropriate to, and therefore did not, rely solely on the quantitative results of the selected comparable company analysis. Accordingly, Barclays also made certain qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of ETP and the selected comparable companies that could affect the public trading values of each in order to provide a context in which to consider the results of the quantitative analysis. These qualitative judgments related primarily to the differing sizes, growth prospects, profitability levels and degrees of operational risk between ETP and the selected MLPs included in the selected comparable company analysis. The equity value range for the ETP common units yielded by the ETP selected comparable company analysis implied a reference equity value range for ETP of $37.00 to $45.00 per ETP common unit.

The MLPs selected with respect to SXL were:

Buckeye Partners, LP;

Enterprise Products Partners, LP;

Magellan Midstream Partners, LP;

MPLX, LP; and

Plains All American Pipeline, LP.

Barclays calculated and analyzed distributable cash flow per unit yields using published estimates by third party equity research analysts for estimated distributable cash flow per unit in 2017 and 2018 for each of the comparable companies selected and for SXL using the SXL Projections. The results of the SXL selected comparable company analysis are summarized below:

| Distributable Cash Flow per Unit Yield: | Yield Range of Comparable MLPs of SXL | | |
|---|---|---|---|
| | Low | Median | High |
| 2017E Yield | 6.6% | 7.9% | 8.6% |
| 2018E Yield | 6.8% | 8.4% | 9.1% |

Barclays selected the comparable MLPs listed above because their business and operating profiles are reasonably similar to that of SXL. However, because of the inherent differences between the business, operations and prospects of SXL and those of the selected comparable companies, Barclays believed that it was inappropriate to, and therefore did not, rely solely on the quantitative results of the selected comparable company analysis. Accordingly, Barclays also made certain qualitative judgments concerning differences between the business, financial and operating characteristics and prospects of SXL and the selected comparable companies that could affect the public trading values of each in order to provide a context in which to consider the results of the quantitative analysis. These qualitative judgments related primarily to the differing sizes, growth prospects, profitability levels and degrees of operational risk between SXL and the selected MLPs included in the selected comparable company analysis. The equity value range for the SXL common units yielded by the SXL comparable company analysis implied a reference equity value range for SXL of $26.00 to $33.00 per SXL common unit.

Using the implied reference equity value per unit ranges for each of ETP and SXL, Barclays derived a reference implied exchange ratio range of 1.1212x to 1.7308x without Expected Synergies, and 1.0955x to 1.6870x with Expected Synergies.

Barclays noted that the exchange ratio of 1.5000x to be offered to unaffiliated ETP unitholders in the proposed transaction was in line with the implied equity value range per ETP common unit and the implied exchange ratio range yielded by Barclays' selected comparable companies analysis.

(e) From pages 72-73 of the Registration Statement:

***Selected Precedent Transactions Analysis***

Barclays reviewed and compared the purchase prices and financial multiples paid in selected other transactions that Barclays deemed relevant based on its experience with merger and acquisition transactions, specifically in the MLP industry. Barclays chose such MLP merger transactions based on, among other things, the similarity of the applicable companies to ETP and SXL with respect principally to size and operational focus and because the organizations involved are all structured as MLPs. Each of the selected transactions was a merger of two MLPs that was announced between October 1997 and October 2016. None of the transactions selected based on the criteria were subsequently excluded in conducting this analysis. The following list sets forth the transactions analyzed based on such characteristics:

| Target/Acquiror | Announcement Date |
|---|---|
| • PennTex Midstream Partners, LP / Energy Transfer Partners, L.P. | October 2016 |
| • JP Energy Partners LP / American Midstream Partners, LP | October 2016 |
| • Markwest Energy Partners, LP / MPLX LP | July 2015 |
| • Crestwood Midstream Partners, LP / Crestwood Equity Partners, LP | May 2015 |
| • Regency Energy Partners LP / Energy Transfer Partners, L.P. | January 2015 |
| • Atlas Pipeline Partners, LP / Targa Resources Partners, LP | October 2014 |
| • Oiltanking Partners, LP / Enterprise Products Partners, LP | October 2014 |
| • Williams Partners, LP / Access Midstream Partners, LP | June 2014 |
| • PVR Partners, LP / Regency Energy Partners LP | October 2013 |
| • Crestwood Midstream Partners, LP / Inergy Midstream, LP | May 2013 |
| • Copano Energy, LLC / Kinder Morgan Energy Partners, LP | January 2013 |
| • Duncan Energy Partners, LP / Enterprise Products Partners, LP | April 2011 |
| • TEPPCO Partners, LP / Enterprise Products Partners, LP | June 2009 |
| • Pacific Energy Partners, LP / Plains All American Pipeline, LP | June 2006 |
| • Kaneb Pipe Line Partners, LP / Valero LP | November 2004 |
| • Gulfterra Energy Partners, LP / Enterprise Products Partners, LP | December 2003 |
| • Santa Fe Pacific Pipeline Partners, LP / Kinder Morgan Energy Partners, LP | October 1997 |

Using publicly available information, Barclays calculated and analyzed the multiples of enterprise value, or "EV," to last twelve month ("LTM") earnings before interest, taxes, depreciation and amortization, or "LTM EBITDA," represented by the prices paid in selected precedent transactions. The results of the selected precedent transactions analysis are summarized below:

| | | EV/LTM EBITDA | | |
|---|---|---|---|---|
| Enterprise Value as a Multiple of: | Low | Median | Mean | High |
| LTM EBITDA | 9.2x | 15.5x | 16.2x | 25.9x |

The reasons for and the circumstances surrounding each of the selected precedent transactions analyzed were diverse and there are inherent differences between the businesses, operations, financial conditions and prospects of ETP, SXL, and the MLPs included in the selected precedent transactions analysis. Accordingly, Barclays believed that a purely quantitative selected precedent transactions analysis would not be particularly meaningful in the context of considering the proposed transaction. Barclays therefore made qualitative judgments concerning differences between the characteristics of the selected precedent transactions and the proposed transaction which would affect the acquisition values of the selected target companies and ETP and SXL. Based upon these judgments, Barclays' selected precedent transactions analysis yielded a reference equity value range for the ETP common units of $34.00 to $41.00 per ETP common unit and a reference

> equity value range for the SXL common units of $17.00 to $24.50 per SXL common unit.
>
> Using the implied reference equity value per unit ranges for each of the ETP common units and the SXL common units, Barclays also derived a reference implied exchange ratio range of 1.3878x to 2.4118x.
>
> Barclays noted that the exchange ratio of 1.5000x to be offered to unaffiliated ETP unitholders in the proposed transaction was in line with the implied equity value range per ETP common unit and the implied exchange ratio range yielded by Barclays' selected precedent transactions analysis.

(f) From page 73 of the Registration Statement:

> ***Analysis of Equity Research Analyst Price Targets***
> Barclays reviewed and compared, as of November 18, 2016, the publicly available price targets of ETP common units and SXL common units published by equity research analysts associated with various Wall Street firms, of which there were 14 (including Barclays' equity research analyst price targets for each of ETP and SXL). The research analysts' price targets per ETP common unit ranged from $36.00 to $55.00 and per SXL common unit ranged from $26.00 to $44.00. The publicly available share price targets published by such equity research analysts do not necessarily reflect the current market trading prices for ETP common units or SXL common units and these estimates are subject to uncertainties, including future financial performance of ETP and SXL and future market conditions. Using the range of research analyst price targets per ETP common unit and SXL common unit, Barclays also derived a reference implied exchange ratio range of 0.8182x to 2.1154x. Barclays noted that the exchange ratio of 1.5000x to be offered in the proposed transaction was in line with the implied equity value range per ETP common unit and the implied exchange ratio range yielded by Barclays' research estimate analysis.

79. The Registration Statement is false or misleading due to the omissions identified above. Without such undisclosed information, ETP unitholders cannot evaluate for themselves whether the financial analyses performed by Barclays were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that unitholders can

fully evaluate the extent to which Barclays' opinions and analyses should factor into their voting decision.

**Material Omissions Concerning the Sale Process**

80. The Individual Defendants fail to disclose material information relating to, among other things, the sales process leading up to the Proposed Transaction, including:

(a) How the members of the Conflicts Committee were chosen and vetted to identify potential conflicts of interest, and why the Board appointed Grimm and Skidmore to the Conflicts Committee;

(b) Details of the Conflicts Committee's review and evaluation of any potential conflicts arising in connection with the merger or other related arrangements and agreements authorized by the ETP Board;

(c) Whether the Board considered Barclays' relationship with, and substantial investments in Sunoco, and whether and how these conflicts were addressed;

(d) The timing and nature of all communications regarding future employment and directorship of ETP's officers and directors, including who participated in all such communications;

(e) Whether Barclays or the Board received any unsolicited indications of interest from other potential buyers and whether the Board or the Conflicts Committee responded to such indications of interest;

(f) The role ETE played in connection with the Proposed Transaction, particularly consider its representatives' participation in many transaction-related Board meetings and its concession on certain financial terms related to the Proposed Transaction;

(g) How and when the proposed transaction structure discussed on November 11, 2016 was developed and whether the parties considered an all-cash or mixed cash/stock transaction; and

(h) The details and value of the incentive distribution rights in ETP and the "corresponding ETP incentive distribution subsidies provided for in the ETP partnership agreement."

81. The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a) From page 50 of the Registration Statement:

> On November 1, 2016, the ETP Board and ETE Board held a joint meeting to discuss ETP management's analysis related to a potential merger transaction between ETP and SXL and the expected structure for such transaction. The ETP Board determined that any such transaction would be subject to review and approval of the ETP Conflicts Committee and determined to appoint David K. Skidmore and Michael K. Grimm to the ETP Conflicts Committee and delegate to the ETP Conflicts Committee the authority to (i) review and evaluate the proposed transaction, (ii) negotiate the terms and conditions of the proposed transaction and (iii) determine whether to approve the proposed transaction and to recommend approval of the proposed transaction to the ETP Board. The formal resolutions establishing the ETP Conflicts Committee, appointing Messrs. Skidmore and Grimm to serve on such committee and delegating authority to the ETP Conflicts Committee to review the proposed transaction (consistent with the motions approved by the ETP Board on November 1, 2016) were adopted on November 14, 2016.

(b) From page 49 of the Registration Statement:

> On October 19, 2016, ETE management had an informal discussion with the ETP Board and the board of directors of LE GP, LLC, the general partner of ETE (the "ETE Board"), regarding the possibility of a merger of ETP and SXL.

(c) From page 51 of the Registration Statement:

> On November 8, 2016, the ETP Conflicts Committee held a telephonic meeting with representatives of Potter Anderson, Barclays, Latham, Mr. Mason, Mr. Long, and Bradford Whitehurst, Executive Vice President and Head of Tax of LE GP, LLC to discuss the structure and rationale of the proposed transaction, the role of

ETE in connection therewith, the exchange of diligence information, including financial projections, and the anticipated process regarding exchange of proposals and negotiations between the ETP Conflicts Committee and the SXL Conflicts Committee.

(d) From page 52 of the Registration Statement:

On November 11, 2016, Mr. Warren sent a letter to the SXL Board, which indicated that ETE believed that it would be advisable for SXL to consider making a proposal to acquire ETP in an all equity transaction in which the equity exchange ratio would be based on a volume weighted average price for the common units of each of SXL and ETP, with an appropriate premium being offered to the ETP common unitholders based on SXL's analysis. The letter also indicated that, as SXL would be the acquiring entity in this transaction, the existing structure of incentive distribution rights in SXL embedded in the current SXL partnership agreement would continue following the closing of the transaction. The letter also indicated that ETE would evaluate and assist with any transaction that SXL would consider proposing to ETP and, in light of ETE's various rights under the partnership agreements and limited liability company agreements related to the general partners of each of SXL and ETP, ETE would be prepared to take appropriate action to consent to a transaction between SXL and ETP that ETE determines is beneficial to the unitholders of ETE. Following the delivery of this letter, Mr. Mason had telephonic conversations with Mr. Hennigan, and a representative of RLF to clarify that, based on this transaction structure, the then-existing SXL incentive distribution subsidies would continue following the closing of the proposed transaction but that, due to the extinguishment of the incentive distribution rights in ETP in connection with ETP being merged with a subsidiary of SXL pursuant to the proposed transaction structure, the corresponding ETP incentive distribution subsidies provided for in the ETP partnership agreement would also be extinguished.

(e) From page 54 of the Registration Statement:

On November 17, 2016, the ETP Conflicts Committee held a series of meetings with Barclays and Potter Anderson, and with Messrs. Long and Mason, to discuss the SXL Initial Proposal. At one of the meetings on November 17, 2016, Messrs. Long and Mason reported to the ETP Conflicts Committee that ETE had determined it would be willing to maintain all existing ETP incentive distribution subsidies and SXL incentive distribution subsidies following the closing of the merger. Messrs. Long and Mason, however, reiterated that ETE would not be willing to approve additional SXL incentive distribution subsidies. Also during these meetings, among other matters discussed, the participants discussed the unsustainability of ETP's current level of cash distributions per common unit for 2017, 2018 and 2019, with the understanding that, absent a merger transaction, ETP would likely need to reduce distributions per common unit in order to reduce its leverage ratios and increase its cash distribution coverage ratios to levels that

> would support the longer term financial health and future cash distribution growth potential at ETP. The ETP Conflicts Committee and Barclays requested formal guidance from ETP management respecting the likelihood and range of future distribution cuts by ETP.

82. Defendants' failure to provide ETP unitholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the unitholders vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder

83. Plaintiff repeats all previous allegations as if set forth in full.

84. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

85. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

86. By virtue of their positions within the Partnership, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Partnership, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Partnership's and Sunoco's assets. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements. The defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

87. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable unitholders would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

88. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

89. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

90. Plaintiff repeats all previous allegations as if set forth in full.

91. The Individual Defendants acted as controlling persons of ETP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of ETP and participation in or awareness of the Partnership's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Partnership, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

92. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

93. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue

contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

94. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

95. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and for the class, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

D. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

E. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 19, 2017

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel.: (302) 295-5310
Fax: (302) 654-7530
sdr@rl-legal.com
bdl@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010